212 N.J. Super. 472 (1986)
515 A.2d 796
ELIZABETH MCQUAID, EXECUTRIX OF THE ESTATE OF JOSEPH T. MCQUAID, DECEASED, PLAINTIFF-APPELLANT,
v.
BURLINGTON COUNTY MEMORIAL HOSPITAL, HERBERT M. EPSTEIN, M.D., ELMER PASIMIO, M.D., RUTH L. RIZZO, M.D. AND AMERICAN HOME PRODUCTS CORPORATION, AYERST LABORATORIES, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued April 29, 1986.
Decided May 12, 1986.
*473 Before Judges DREIER, BILDER and GRUCCIO.
Gary D. Ginsberg argued the cause for appellant (Nathan A. Friedman, attorney; Gary D. Ginsberg, on the brief).
John R. Orlovsky argued the cause for respondents Herbert M. Epstein, M.D. and Elmer Pasimio, M.D. (Orlovsky, Grasso & Orlovsky, attorneys; John R. Orlovsky on the brief).
*474 John H. Osorio argued the cause for respondent Ruth L. Rizzo, M.D. (Montano, Summers, Mullen, Manuel & Owens, attorneys; Arthur Montano, on the brief).
Anita Hotchkiss argued the cause for respondent Ayerst Laboratories (Porzio, Bromberg & Newman, attorneys; Anita Hotchkiss, of counsel and on the brief).
BILDER, J.A.D.
This is a medical malpractice, drug product liability action arising out of the use of halothane anesthesia during the performance of an operation on plaintiff's decedent. Named as defendants were the decedent's surgeon, Dr. Epstein; the anesthesiologist, Dr. Pasimio; Dr. Rizzo, a resident who took the decedent's pre-surgical history; Ayerst Laboratories, the manufacturer of the halothane; and Burlington County Memorial Hospital. The claim against the hospital was dismissed after openings. Plaintiff does not appeal this ruling.
In general, plaintiff contended that her decedent's death was caused by his hypersensitivity to halothane; that the doctors were negligent in administering it without consulting records of prior hospitalizations which would have alerted them to his sensitivity to the drug; and that the manufacturer failed to provide sufficient warnings of the danger.
Following a 14-day trial, in answers to special interrogatories, the jury found that (a) decedent's death was caused by the halothane but (b) Ayerst had not failed to give adequate warnings, and (c) none of the doctors were negligent. Plaintiff appeals from the resultant verdict of no cause for action and the denial of her motion for a new trial. In her brief on appeal she makes the following contentions:
POINT ONE: THE JURY'S VERDICT THAT AYERST LABORATORIES DID NOT FAIL TO GIVE ADEQUATE WARNINGS TO THE MEDICAL PROFESSION CONCERNING THE INHERENT RISKS OF HALOTHANE WAS AGAINST THE WEIGHT OF THE EVIDENCE AND A GROSS MISCARRIAGE OF JUSTICE.

*475 POINT TWO: DR. JEWELL'S TESTIMONY THAT AYERST LABORATORIES CHANGED THE CONTENTS OF ITS PACKAGE INSERT BECAUSE OF A REQUEST BY THE FDA WAS IRRELEVANT AND SEVERELY PREJUDICIAL AND SHOULD NOT HAVE BEEN ALLOWED.
POINT THREE: APPELLANT IS ENTITLED TO A NEW TRIAL AS TO ALL DEFENDANTS BECAUSE OF THE PREJUDICIAL EFFECT THAT THE FDA TESTIMONY HAD CONCERNING ALL DEFENDANTS.
POINT FOUR: THE APPELLANT WAS UNDULY PREJUDICED BY THE TRIAL COURT'S REFUSAL TO ALLOW THE APPELLANT TO READ INTO THE EVIDENCE PORTIONS OF THE DEPOSITION OF DEFENDANT DR. PASIMIO'S EXPERT WITNESS, DR. SCOTT.
POINT FIVE: THE TRIAL COURT ERRED IN FAILING TO GIVE AN ADVERSE INFERENCE CHARGE BASED ON THE NON-APPEARANCE OF DR. SCOTT.
POINT SIX: THE COURT'S REFUSAL TO ALLOW APPELLANT'S EXPERT TO CITE THE MANY ARTICLES AND TEXTS HE HAD READ CONCERNING HALOTHANE ANESTHESIA WAS REVERSIBLE ERROR.
POINT SEVEN: THE JURY'S VERDICT THAT DR. PASIMIO WAS NOT NEGLIGENT WAS SHOCKING IN THE FACE OF THE TESTIMONY AT TRIAL AND WAS CLEARLY AND CONVINCINGLY A MISCARRIAGE OF JUSTICE UNDER THE LAW.
Basic to plaintiff's appeal are two arguments. First, that the verdicts were against the weight of the evidence; second, that improper evidential rulings deprived her of a fair trial. The contentions are clearly without merit. See R. 2:11-3(e)(1)(A) & (E).
The trial, as with most such cases, was a battle between experts. We are satisfied from an examination of the record that the results reached by the jury were well supported by the evidence. See Dolson v. Anastasia, 55 N.J. 2, 6-8 (1969). They were clearly not miscarriages of justice. Ibid.
Nor do we find any error in the evidential rulings. The FDA action with respect to the insert was neither hearsay nor irrelevant. It was not offered to prove the truth of the FDA conclusion that unexplained fever is not an indication of halothane sensitivity, but to show why Ayerst deleted the reference to fever from the insert. Although it may not have provided Ayerst with an absolute defense, Feldman v. Lederle *476 Laboratories, 97 N.J. 429, 461 (1984),[1] it was clearly relevant to the reasonableness of its conduct. Id. at 451. Dr. Scott's deposition was properly excluded; he was not unavailable with in the meaning of R. 4:16-1(c). Even were he not equally available to both parties, the failure of a party to call an expert witness does not normally justify an adverse inference charge. See Anderson v. Somberg, 158 N.J. Super. 384, 395 (App.Div. 1978) certif. den. 77 N.J. 509 (1978). In refusing to permit Dr. Greene to list the titles of the myriad articles and texts he had read, the trial judge properly carried out his responsibility to place reasonable limits on the conduct of the examination.
Affirmed.
NOTES
[1] Ayerst deleted the reference at the request of the FDA. Quaere whether the FDA action does not indeed provide Ayerst with an absolute defense. See Cipollone v. Liggett Group, Inc., 789 F.2d 181 (3d Cir.1986).